# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs April 12, 2011

## MARLON WILLIAMS v. STATE OF TENNESSEE

**Appeal from the Fayette County Circuit Court**
**No. 6194C      J. Weber McCraw, Judge**

---

**No. W2010-01834-CCA-R3-PC  - Filed July 12, 2011**

---

The Petitioner, Marlon Williams, appeals the Fayette County Circuit Court's denial of post-conviction relief from his convictions for possession of marijuana, a Class E felony, and possession of a firearm in the commission of a felony, a Class D felony. He is serving one year for possession of marijuana consecutively to three years for possession of a firearm. The Petitioner contends that he did not receive the effective assistance of counsel in connection with his guilty plea to the possession of a firearm charge and that his pleas were not knowingly and voluntarily entered because he did not understand that the firearm conviction required 100 percent service of the sentence. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J, delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Matthew R. Armour, Somerville, Tennessee, for the appellant, Marlon Williams.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Terry Dycus, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

According to the transcript of the guilty plea hearing, the offenses in this case arise from these facts as recited by the prosecutor:

> Investigator John Wayne Carter along with Detective Julian
> Phillips went to 13275 Highway 196 South in Fayette County,

Tennessee, on a knock-and-talk after developing a dossier that individuals from this residence were selling marijuana and that there might have been some stolen weapons in the home. Also, they observed a set of scales and a baggie beside the couch with some marijuana inside it.

[O]ne of the individuals was in the bedroom with a loaded shotgun. Mr. Benson was in the bathroom when they heard a loud thud or clunk and they found the .40 Glock in the waste can. They asked for permission to continue the search and told him he had the right to say no, that they had already seen some marijuana and the scales and Mr. Williams told them they could look anywhere they wanted. The shotgun did come back stolen out of Holly Springs, Mississippi.

Several bags of marijuana [were] recovered from beside the couch, and two larger bags holding several smaller bags wrapped individually as if for sale. In Mr. Williams' room under the dresser there was some more marijuana along with the .38 caliber Colt revolver. There was a total of 22 bags of marijuana packaged for resale weighing a total of 125.5 grams, set of digital scales, some currency in small denominations totaling $248.00, two confirmed stolen weapons, one that was being investigated. . . .

The transcript of the plea hearing also reflects that the trial court advised the Petitioner of the sentencing range for the offenses charged in the indictment: (1) possession of marijuana with intent to deliver, (2) theft of property, (3) possession of a firearm in the commission of a felony, and (4) possession of drug paraphernalia. The court explained that the Petitioner was subject to Range I sentencing with 30 percent release eligibility for the first two counts but that the firearm possession count must be served at 100 percent. The court inquired whether the Petitioner understood the penalty for the firearm possession count, and the Petitioner responded, "Yes, sir." The trial court questioned the Petitioner about his satisfaction with trial counsel's representation, and the Petitioner affirmed that he was satisfied. The Petitioner pled guilty to possession of marijuana with intent to deliver and possession of a firearm in the commission of a felony, and the State dismissed the remaining counts. The trial court accepted the plea agreement, which provided for a three-year Department of Correction sentence for the firearm conviction and suspension of the one-year sentence for the marijuana conviction. The sentences were required to be served consecutively.

The written plea agreement states the sentence ranges for the four charged offenses. It also reflects that the Petitioner agreed to plead guilty as a Range I offender to felony "possession" with a one-year suspended sentence and that he agreed to plead guilty to "possession of a firearm" with a three-year sentence to be served at 100 percent. The document was signed by the Petitioner, the prosecutor, trial counsel, and the trial court. The document does not address whether the sentences were to be served concurrently or consecutively.

At the post-conviction hearing, trial counsel testified that he met with the Petitioner at least three or four times. He said his discussions with the Petitioner took place at trial counsel's office, in trial counsel's car, and at the Petitioner's father's home. He said, "I advised [the Petitioner] to enter a plea because he had very serious charges against him and he was not going to get any help from the co-defendants." He said that he had several discussions with the prosecutor and that the Petitioner did not accept the initial offers. He recalled the Petitioner's signing the document in which the Petitoner pled guilty and waived his rights to a jury trial and an appeal, and he said he "went over every item on that form with [the Petitioner]." He said he always did this with his clients. He said he remembered discussing the statutory requirement of 100 percent service for the firearm sentence. He said that three weapons were in the house and that the Petitioner pled guilty relative to only one of the three. He said the Petitioner was not eligible for probation for the weapon offense.

Trial counsel testified that he worked with the Petitioner and the Petitioner's father and that they "looked at all the aspects of the charges." He said he filed several motions, including a motion to suppress the evidence obtained during the search of the house. He said he learned that three deputies gave statements saying the Petitioner gave them permission to enter the house. He said he discussed the State's evidence relative to the suppression issue with the Petitioner. He thought there was a hearing on the motion.

Trial counsel testified that he had absolutely no doubt in his mind that the Petitioner understood that the weapon charge required 100 percent service. He said that he talked to one of the co-defendants but that he was limited in this regard after counsel was appointed to represent the co-defendant. He said he learned this co-defendant "was going to roll over on [the Petitioner]."

Trial counsel testified that he completed the plea document, except for the Petitioner's signature. He acknowledged that he might have written an incorrect social security number and date of birth on the form.

On cross-examination, trial counsel agreed that the law required consecutive service for commission of a felony and possession of a weapon in the commission of a felony. He

acknowledged that the plea agreement called for the Petitioner to plead guilty to a minimum, three-year sentence for the weapon offense and to a minimum, one-year suspended sentence for the possession offense. Trial counsel agreed that he spoke with the prosecutor several times in person and on the telephone in attempts to avoid the 100 percent service requirement. He said he eventually discovered that even the trial court had no authority to suspend the sentence for the weapon offense.

Trial counsel testified that he was surprised the petition alleged ineffective assistance of counsel in light of the time he spent on the case. He acknowledged that the Petitioner claimed under oath to have "understood what was going on" at the plea proceedings and that he thought the Petitioner understood. Trial counsel acknowledged that he was currently representing the Petitioner in other matters.

The Petitioner testified that he did not understand the requirement that he serve the weapon possession sentence at 100 percent. He said that when he entered the courtroom for the plea hearing, he had not had any discussions about 100 percent service. He said it was "overwhelming how quick" the plea agreement papers were in his hand after he entered the courtroom. He said that he did not have a chance to read the papers, that he only saw his name and a couple of the charges, and that there were probation papers, as well. He said he completed the probation paperwork while handcuffed in the back of a patrol car. He said he was told to send the probation paperwork back to the court to see if he was eligible for probation. He said the social security number and birthdate under his signature on the guilty plea document were not his. The Petitioner stated that until four to six months after he pled guilty, he did not realize that he was serving his weapon conviction sentence at 100 percent, when trial counsel came to see him regarding his robbery cases and told him he was not able to be released on bond in those cases because he was serving 100 percent for the weapon conviction.

Relative to the facts of his case, the Petitioner testified that although other guns were found in his house, there was evidence about who possessed each weapon when the police came into the house. He said he understood that he was responsible for everything in his house. He said he did not own the gun that formed the basis for the possession of a firearm in the commission of a felony offense.

When asked about trial preparation, the Petitioner testified:

> [T]here was no question. I was like if I wasn't going to cop out, . . . it was like this is the best you going [sic] to get. If you don't get this, . . . it's going to get worse in trial. So, . . . trial wasn't even in the question at all.

4

He said that trial counsel "put the fear in" him about going to trial and that he was convinced he did not want to go to trial.

The Petitioner acknowledged that he heard the trial court review the charges with him at the plea hearing but said he "still wasn't getting the hundred percent thing." He said that had he received a 30 percent sentence, he would have already served most of his time when he pled guilty.

On cross-examination, the Petitioner acknowledged that there was a stolen Glock in the bathroom at his house but said he did not steal it. He admitted that there was marijuana in the house and that he smoked marijuana. He admitted that the .38 caliber Colt revolver was his. He said that the police entered his house illegally and that they never investigated a burglary of his house, which took place earlier that day.

The Petitioner testified that he "love[d trial counsel] to the fullest" and had known trial counsel all his life, but he said that "some people made mistakes." He said he thought trial counsel "could [have done] a little better" in the present case. The Petitioner acknowledged that he answered,"Yes, sir" to the trial court's questions at the plea hearing. He said he was a high school graduate. He maintained that he did not understand the 100 percent service requirement. He said he did not know whether the result would be more favorable if he went to trial because "it looks bad on me either way it goes."

After the hearing, the trial court filed an order denying the petition. The trial court found that the Petitioner's testimony was not credible and that trial counsel's testimony was credible. The court also found that the transcript of the guilty plea hearing reflected that the Petitioner was advised of his rights and the penalties for the offenses to which he pled guilty. The court found:

> [The Petitioner] understood the significance and consequences of the particular decision to plead guilty and the decision was not coerced. The [Petitioner] was fully aware of the direct consequence of the plea, including the possibility of the sentence actually received. He was informed at the plea hearing of the sentence.

The trial court also found that trial counsel provided "adequate assistance." The trial court concluded that the Petitioner failed to establish his post-conviction claims by clear and convincing evidence, and the court denied relief. This appeal followed.

5

# I

The Petitioner contends that his guilty pleas were not knowingly, voluntarily, and intelligently entered because he did not understand the 100 percent service component of the plea. The State counters that the trial court correctly found that the Petitioner failed to prove this claim. We agree with the State.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2006).

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. See State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). The circumstances include:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (citing Caudill v. Jago, 747 F.2d 1046, 1052 (6th Cir. 1984)). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." Blankenship, 858 S.W.2d at 904.

The record reflects that the Petitioner was advised of the 100 percent service requirement in writing, that he was advised again by the trial court, and that trial counsel said he explained the requirement to the Petitioner and thought the Petitioner understood. The

trial court found that the Petitioner's testimony was not credible. The record does not preponderate against the trial court's determination, and the Petitioner is not entitled to relief.

In so holding, we have rejected the Petitioner's argument that his pleas were not knowing, voluntary, and intelligent because they were "induced by the threats and promises and the threats and assurances that there was no possibility of success at trial." The Petitioner notes that he questioned the validity of the search that led to the charges and contends that he was not afforded the opportunity to raise the search issue in the trial court. The post-conviction record reflects that trial counsel raised the search issue in the trial court but that the facts were not favorable to the Petitioner. In any event, the record supports the trial court's determination that the Petitioner understood the plea agreement and that he entered a knowing, voluntary, and intelligent guilty plea.

**II**

The Petitioner also contends that he did not receive the effective assistance of counsel in the conviction proceedings. The State contends that the trial court did not err in finding that the Petitioner failed to prove his claim. We agree with the State.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the Petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance fell below a reasonable standard is not enough because the Petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that the counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability means a "probability sufficient to undermine confidence in the outcome." Id. When a petitioner pleads guilty, he must show a reasonable probability that, but for the errors of his counsel, he would not have pled guilty.

7

See Hill v. Lockhart, 474 U.S. 52, 59 (1985); Adkins v. State, 911 S.W.2d 334, 349 (Tenn. Crim. App. 1994).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were "within the range of competence demanded of attorneys in criminal cases." Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Baxter, 523 S.W.2d at 936. Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. See DeCoster, 487 F.2d at 1201; Hellard, 629 S.W.2d at 9.

The Petitioner argues that trial counsel unilaterally decided not to pursue the issue regarding the legality of the search and that trial counsel gave the Petitioner no options other than to plead guilty. The record reflects, however, that trial counsel filed a motion to suppress, and counsel thought there had been a hearing. Whether or not there was a hearing, trial counsel investigated the facts and determined that the Petitioner was unlikely to prevail in the motion. He advised the Petitioner of the poor prospect of success on the motion. The record also reflects that trial counsel investigated the facts of the underlying case and told the Petitioner that he was unlikely to prevail at trial and that he would likely receive a greater sentence than what was offered in the plea negotiation process. The trial court accredited this proof, and we conclude the evidence does not preponderate against the court's finding. The trial court properly concluded that the Petitioner failed to prove his ineffective assistance of counsel claim. The Petitioner is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE

8